ROBERT J. GLADWIN, Judge *68 Holly Ballegeer appeals the Crawford County Circuit Court's decree of divorce, which divides the marital business and personal property between appellee Craig Ballegeer and her. Holly argues that the circuit court's decree is clearly erroneous because (1) the division of the marital business requires her to compete with Craig in a bidding process; (2) Craig is not required to compensate her for one-half of the sale proceeds of marital property that he sold during the pendency of the litigation; (3) the corporate account is not divided equally between the parties; (4) she was denied attorney's fees or fees for her expert witness; and (5) the Can Am is awarded to Craig rather than ordered sold with the proceeds divided between the parties. We reverse and remand in part and affirm in part.
I. Facts and Procedural History
The parties were married on July 2, 1983, and began a business in 1997 called Groundskeeper, Inc., which acts as the contractor for landscaping and maintenance for several fast-food corporations. Groundskeeper collects the revenue from the corporations and pays the subcontractors for their labor. For a time during their marriage, Craig ran the business, and Holly was the bookkeeper. However, by the time of their separation in 2016, Holly worked at a retail store earning $ 8 an hour and continues to do so. In September 2015, Craig filed for separate maintenance, and Holly counterclaimed for divorce. Craig dismissed his separate-maintenance complaint but filed an amended complaint for divorce on September 26, 2016.
After a final hearing on June 12, 2017, the circuit court filed a letter ruling dated August 29, 2017, awarding Holly a divorce on her counterclaim and ordering that the marital home be sold. Each party was awarded his and her personal automobile with any attached debt, and other property was ordered to be sold with the proceeds equally divided. Each was awarded the furniture and personal items in his and her possession, and any personal property not divided by agreement or otherwise in the letter order was to be sold and the proceeds divided equally. The court stated, "Any remaining items under paragraph 'C' of [Holly's] Exhibit 1 shall be sold." Craig was ordered to pay Holly $ 2200 a month in alimony for five years. The court further ordered that Groundskeeper was valued at $ 183,000 "for one-half interest" and that the parties would divide the business as follows:
[Craig] shall have the first right to buy [Holly's] interest in the business at the price of $ 183,000.00. If refused, [Holly] shall have the next right to buy the business at that price. The value shall then decrease in $ 5,000.00 increments until one party exercises the right to buy which shall be accompanied by an earnest money check in the amount of 10% of the purchase amount which shall be deposited in the trust account of the attorney of the party who is the seller. The full price shall be paid within thirty (30) days and deposited again in the attorney's trust account for the party representing the seller. These funds after closing and full payment shall be paid to the party who is the seller. The *69 tax debt shall be assumed by the party purchasing the business, and shall be that party's responsibility.
The divorce decree was filed October 5, 2017, and the division of the marital business followed the court's letter ruling. The division of property was more specifically set forth as follows:
[Craig] is hereby awarded all right, title, and interest in his clothing, personal effects, and jewelry. [Holly] is hereby awarded all right, title, and interest in her clothing, personal effects, and jewelry. [Holly] is awarded possession of the parties' dogs.
[Craig] is hereby awarded the Can Am currently in his possession, and shall be solely responsible for any and all debt and expenses associated therewith and shall hold [Holly] harmless from the same. [Holly] is hereby awarded the Z4 currently in her possession, and shall be solely responsible for any and all debt and expenses associated therewith and shall hold [Craig] harmless from the same. Neither party shall be awarded equity in the other party's vehicle. The 2015 GMC Canyon pickup, trailers, Sports Coach diesel motorhome, boat and BMW k100gt shall all be sold, and any proceeds shall be equally divided between the parties.
Each party shall be awarded the furniture and personal items currently in his/her possession. [Craig] shall be awarded all of the guns and accompanying ammunition except for the 380, .22, and 45, which shall be awarded to [Holly]. Any and all personal property not divided by agreement or otherwise disposed of within this Decree shall be sold, and the parties shall equally divide any proceeds. The parties' hot tub, projection screen, and riding lawn mower shall be sold with the home.
The parties' ATV, Smokers, Foosball table, movies, gas grill, spreader, outdoor chest as listed in Paragraph "C" of [Holly's] Exhibit 1 shall be sold. Any and all items that are to be sold shall be placed for sale in a commercially reasonable manner, and if not sold privately within six (6) months of the entry of this Decree such items shall be sold by the Clerk if requested by either party. The parties shall equally divide any proceeds from such sales.
[Holly's] claim for property sold by [Craig] is denied for want of proof.
The parties shall immediately execute any and all documentation necessary to these awards/transfers of property, if applicable.
The business accounts shall remain with the business, such that the purchaser of the business retains control over such accounts.
Holly filed a motion for reconsideration on October 17, 2017, asking the circuit court to reconsider its method for her to receive her interest in the marital business and its denial of her request for one-half the value of the items sold by Craig. She also asked that the Groundskeeper account be equally divided and for an award of $ 4700 in attorney's fees and $ 4500 in expert-witness fees. On the same date, Holly filed a contempt motion claiming that Craig was not following the decree by preventing her access to accounts and property and by inconsistently paying alimony. Also on the same date, Holly filed a motion to amend the divorce decree arguing that the Can Am awarded in the decree is the ATV as set forth in her Exhibit 1. She claimed that the letter opinion did not single out the Can Am and that the decree does not comport with the language in her exhibit identifying the property. She asked that the decree be modified to reflect *70 that the Can Am be sold instead of retained by Craig. On October 30, 2017, Craig filed a contempt motion, claiming, among other things, that after the decree was filed, Holly trespassed on his property and took the Can Am without his permission. The circuit court did not rule on these motions. Holly filed a notice of appeal on December 5, 2017.
II. Standard of Review and Applicable Law
This court reviews cases involving the division of marital property de novo. Beck v. Beck , 2017 Ark. App. 311, 521 S.W.3d 543. With respect to the division of property in a divorce case, we review the circuit court's findings of fact and affirm them unless they are clearly erroneous or against the preponderance of the evidence. Franks v. Franks , 2018 Ark. App. 266, 548 S.W.3d 871. A finding is clearly erroneous when the reviewing court, on the entire evidence, is left with the definite and firm conviction that a mistake has been committed. Id. In order to demonstrate that the circuit court's ruling was erroneous, the appellant must show that the circuit court abused its discretion by making a decision that was arbitrary or groundless. McGahhey v. McGahhey , 2018 Ark. App. 597, 567 S.W.3d 522. We give due deference to the circuit court's superior position to determine the credibility of witnesses and the weight to be given their testimony. Id.
Arkansas Code Annotated section 9-12-315 provides that at the time a divorce decree is entered, all marital property shall be distributed one-half to each party unless the court finds such a division to be inequitable. Ark. Code Ann. § 9-12-315(a)(1)(A) (Repl. 2015). In that event the court shall make some other division that the court deems equitable taking into consideration the length of the parties' marriage, their ages, health, occupation, income, and the like. See Ark. Code Ann. § 9-12-315(a)(1)(A)(i)-(ix). When an unequal division of property is made based on these considerations, the court must state its bases and reasons for doing so in its order. Ark. Code Ann. § 9-12-315(a)(1)(B).
Craig contends that the evidence presented established that the clients and contracts associated with Groundskeeper are directly tied to him and his efforts over the last twenty years. He claims that the record shows that it would be difficult for the parties to acquire a loan based on the valuations presented by the expert witnesses-Holly's expert testified that the value is $ 397,000 and Craig's expert valued the business at $ 336,000. The circuit court determined the value to be $ 366,000 and that a one-half interest was approximately $ 183,000. Craig testified to many uncertainties regarding the business, including his poor health and that many of their clients are hesitant to continue with Groundskeeper because of the parties' litigation. He contends, therefore, that the circuit court's decision to allow the parties to bid against each other was an equitable method of disposing of such a complex marital asset. He argues that the circuit court's decision was not clearly erroneous in light of the evidence.
Holly contends that the circuit court clearly erred and abused its discretion in dividing the marital business between the parties by requiring her to compete with Craig in a bidding process. She does not dispute that a one-half interest in the business is worth $ 183,000; however, she claims that the circuit court's method of division was erroneous. We agree.
The circuit court ordered that Craig shall have the first right to buy Holly's *71 interest at the price of $ 183,000. If he refuses to do so, she has the next right to buy Craig's interest in the business at that price. The value then decreases in $ 5000 increments until one party exercises the right to buy. Holly contends that this process is unfair because the parties do not have the same financial ability to borrow funds. Craig has control of the business accounts and is still receiving the income from the business. On the other hand, she works part time for $ 8 an hour and has no ability to borrow funds. Holly also argues that the circuit court did not explain why she should not receive her one-half interest in the business and claims that she will receive only what Craig is willing to pay her.
We hold that by not requiring Craig to buy Holly's interest at $ 183,000-the value assigned by the circuit court-the circuit court, in effect, awarded an unequal distribution. The circuit court did not state its basis for not dividing the marital property equally. By allowing a reverse auction between the parties, one party may be forced to accept an amount that is less than $ 183,000 for his or her one-half interest. If the circuit court intended this unequal distribution, its basis for the award must be stated. See Ark. Code Ann. § 9-12-315(a)(1). Therefore, we reverse and remand for the entry of an order in accordance with this opinion.
IV. Sale of Marital Items During Litigation
Holly relies on Administrative Order No. 1, which restrains each party from selling property belonging to the parties from the time the divorce action is filed until further order. She claims that Craig sold numerous items throughout the divorce proceeding and retained the money for himself. She cites the items listed in paragraph "D" of her exhibit 1 and claims that it was not disputed that Craig sold the items and received all the proceeds. She argues that these items should have been equally divided and that the circuit court did not cite any reason for not doing so.
Holly argues that the circuit court's temporary order provided that Craig would continue to run the "non-financial aspects of the business" and was allowed to "maintain the accounts and business to the best of his ability" during the pendency of the action. She contends that hundreds of thousands of dollars went through the corporate account in 2016 alone. She claims that the account was a marital asset and should have been equally divided between the parties. See Watkins v. Watkins , 2012 Ark. App. 27, 388 S.W.3d 53 ; Coombe v. Coombe , 89 Ark. App. 114, 201 S.W.3d 15 (2005) (holding that assets acquired after separation and prior to a grant of divorce are considered marital property). She contends that the circuit court gave no explanation for not dividing the corporate account equally.
VI. Fees
The award of attorney's fees and costs lies in the sound discretion of the circuit court, and such will not be disturbed on appeal absent an abuse of discretion. Baber v. Baber , 2011 Ark. 40, 378 S.W.3d 699. Holly contends that during the marriage, she was totally dependent on Craig, she has a G.E.D., and she is employed part time. In contrast, Craig has been operating a business that generated a gross annual income of approximately $ 750,000 in 2016. Holly argues that the circuit court abused its discretion by denying her request for expert-witness and attorney's fees because of the parties' unequal financial footing.
Craig contends that there was no abuse of discretion in denying Holly's request for attorney's fees and expert-witness fees. We agree with his contention. Both parties asked for fees, and apart from a $ 1000 fee awarded to Craig because he had to pursue a writ of assistance during the case, neither party was awarded fees. Accordingly, we hold that there was no abuse of discretion in denying Holly's request for fees.
VII. Can Am and ATV
Craig contends that the evidence and pleadings indicate that he requested the Can Am. Holly's trial exhibit was adopted as a means to dispose of the marital property, and it indicated her desire to possess or benefit from the funds derived from the "ATV." Craig claims that nothing in the record indicates that the Can Am and the ATV are one and the same. We hold that because there is no proof in the record to settle this matter, the circuit court's ultimate decision to award Craig the Can Am was neither unreasonable nor clearly erroneous.
Affirmed in part; reversed and remanded in part.