Cite as 2021 Ark. App. 390

# ARKANSAS COURT OF APPEALS

DIVISION III

No. CV-20-393

| | | |
|---|---|---|
| CRAIG BALLEGEER | | OPINION DELIVERED October 20, 2021 |
| | APPELLANT | APPEAL FROM THE CRAWFORD COUNTY CIRCUIT COURT [NO. 17DR-15-497] |
| V. | | |
| | | HONORABLE MARC MCCUNE, JUDGE |
| HOLLY BALLEGEER | | |
| | APPELLEE | DISMISSED WITHOUT PREJUDICE |

## ROBERT J. GLADWIN, Judge

Craig Ballegeer appeals the Crawford County Circuit Court's March 30, 2020 order, which followed this court's mandate, reversing and remanding in part and affirming in part the parties' divorce decree. *Ballegeer v. Ballegeer*, 2019 Ark. App. 269, 577 S.W.3d 269 (*Ballegeer I*). Craig alleges seven points on appeal, arguing that the circuit court erred in its implementation of the mandate by ordering him to buy Holly's share in the parties' landscaping business. Appellee Holly Ballegeer cross-appeals, arguing that Craig should be ordered to pay her in a lump sum or over time via secured alimony payments. We dismiss the appeal without prejudice for lack of a final order.

## I. *Ballegeer I*

The parties were married in 1983 and divorced by decree filed October 5, 2017. Motions were filed in the circuit court, after which the notice of appeal in *Ballegeer I* was filed on December 5, 2017. This court stated,

On [October 17, 2017], Holly filed a contempt motion claiming that Craig was not following the decree by preventing her access to accounts and property and by inconsistently paying alimony. Also on the same date, Holly filed a motion to amend the divorce decree arguing that the Can Am awarded in the decree is the ATV as set forth in her Exhibit 1. She claimed that the letter opinion did not single out the Can Am and that the decree does not comport with the language in her exhibit identifying the property. She asked that the decree be modified to reflect that the Can Am be sold instead of retained by Craig. On October 30, 2017, Craig filed a contempt motion, claiming, among other things, that after the decree was filed, Holly trespassed on his property and took the Can Am without his permission.

*Ballegeer I*, 2019 Ark. App. 269, at 4–5, 577 S.W.3d at 69–70. We specifically note that Craig's motion seeks a contempt finding against Holly for (1) failing to pay $1,000 in attorney's fees awarded to Craig; (2) selling the guns that were awarded to Craig in the divorce decree; (3) failing to pay Craig half of her 401k as provided in the decree; and (4) violating the restraining order by making derogatory remarks to the parties' child and family. In Holly's December 5, 2017 notice of appeal, she abandoned any pending but unresolved claims, leaving pending only Craig's contempt motion seeking to enforce the decree. *See Derrick v. Brown*, 2020 Ark. App. 20, at 3 (citing *Ford Motor Co. v. Washington*, 2012 Ark. 354, at 2; *Jenkins v. APS Ins., LLC*, 2012 Ark. App. 368, at 5) (a party cannot abandon the claims of another party).

We affirmed the circuit court's decree in all aspects except for the division of the parties' marital landscaping business, Groundskeeper, Inc. *Ballegeer I.* The reversed portion of the circuit court's decree states,

The marital business shall be valued at one hundred eighty-three thousand dollars and 00/100 ($183,000.00) for one-half interest. The parties shall divide the business as follows: [Craig] shall have the right to buy out [Holly's] interest at the price of $183,000.00. If refused, [Holly] shall have the right to buy out [Craig's] interest at $183,000.00. The value shall then decrease in five thousand dollars and 00/100 ($5,000.00) increments until one party exercises the right to buy which shall be accompanied by an earnest money check in the amount of ten percent (10%) of

2

the purchase amount which shall be deposited in the trust account of the attorney of the party who is the seller. The remainder of the purchase price shall be paid within thirty (30) days, and again, deposited into the trust account of the attorney for the seller. After closing and full payment these funds will be released to the seller. The buying party shall assume the tax debt for the business and shall be solely responsible for the same. The buying party shall hold the other party harmless from said tax debt.

In *Ballegeer I*, Holly argued that the circuit court erred by requiring her to compete with Craig in a bidding process. We agreed that the circuit court's method of division was erroneous:

> The circuit court ordered that Craig shall have the first right to buy Holly's interest at the price of $183,000. If he refuses to do so, she has the next right to buy Craig's interest in the business at that price. The value then decreases in $5000 increments until one party exercises the right to buy. Holly contends that this process is unfair because the parties do not have the same financial ability to borrow funds. Craig has control of the business accounts and is still receiving the income from the business. On the other hand, she works part time for $8 an hour and has no ability to borrow funds. Holly also argues that the circuit court did not explain why she should not receive her one-half interest in the business and claims that she will receive only what Craig is willing to pay her.
>
> We hold that by not requiring Craig to buy Holly's interest at $183,000—the value assigned by the circuit court—the circuit court, in effect, awarded an unequal distribution. The circuit court did not state its basis for not dividing the marital property equally. By allowing a reverse auction between the parties, one party may be forced to accept an amount that is less than $183,000 for his or her one-half interest. If the circuit court intended this unequal distribution, its basis for the award must be stated. *See* Ark. Code Ann. § 9-12-315(a)(1). Therefore, we reverse and remand for the entry of an order in accordance with this opinion.

*Ballegeer I*, 2019 Ark. App. 269, at 7, 577 S.W.3d at 70–71.

## II. *On Remand*

Our mandate was issued on May 15, 2019, and filed in the circuit court on June 6. Letters among the parties' attorneys and the court reflect that, on remand, the case was assigned to Judge Marc McCune, who is not the judge who issued the circuit court's decree.

3

At the December 9 hearing, the circuit court stated that it understood this court's opinion to mean that Craig is to buy the business for $183,000. Craig's counsel disagreed, arguing that the case was remanded for the circuit court to state its reasons for the unequal distribution because the circuit court "could have ordered that [Craig] buy [Holly] out if [it had] wanted to. But that's not what [it] did. I think that all that needs to be done is the basis for [its] decision needs to be put in the decree."[1]

At the close of the hearing, Craig's counsel requested a sale of the business on the courthouse steps and to move the case "back to Judge Medlock." The circuit court denied those motions and ordered Craig to purchase Holly's interest. The circuit court's December 11, 2019 order states,

> On the basis of the Record, and the Opinion and remand of the Arkansas Court of Appeals, this Court (a) orders Craig Ballegeer to pay $183,000.00, plus interest at 6% from October 5, 2017 (a total of $206,915.34, as of December 9, 2019, and cumulating at a daily rate of $30.08), until January 9, 2020, and (b) orders Craig Ballegeer to appear on January 9, 2020, to present a plan for paying this amount, either in a lump sum, or by some other means.

At the January 9, 2020 hearing, Craig testified that he wanted to get appropriate deduction of credits on the $183,000 he owed Holly. The following colloquy occurred:

CRAIG'S COUNSEL: Now you filed a motion for contempt that's still pending, and in that motion for contempt there is a $1,000 attorney fee amount that was ordered in the

---

[1]We emphasize that our opinion did not require a specific party to buy the other's interest in the marital business. The newly assigned judge's dilemma in being unable to ascertain the former judge's intent underlines the necessity of the remand—to state the circuit court's basis for ordering, in effect, an unequal distribution by virtue of a reverse auction of the marital asset. "By allowing a reverse auction between the parties, one party may be forced to accept an amount that is less than $183,000 for his or her one-half interest." *Ballegeer I*, 2019 Ark. App. 269, at 7, 577 S.W.3d at 71. Any amount less than $183,000— one-half the value assigned to the business—would amount to an unequal distribution of the asset.

|  |  |
|---|---|
| | decree to be paid by [Holly], have you ever received that? |
| CRAIG: | No, sir. |
| CRAIG'S COUNSEL: | There was also in the decree, and this is addressed to the motion for contempt that's still pending as well, uh, but there were guns that were being ordered to (be) returned to you that have not been returned? |
| CRAIG: | That's correct. |
| CRAIG'S COUNSEL: | And the approximate value of those guns is what? |
| CRAIG: | Fifty-five hundred. |

. . . .

|  |  |
|---|---|
| CRAIG'S COUNSEL: | Okay.  There was also in the decree that a Quadro was to be done and the retirement account was to be split, uh, has that been done? |
| CRAIG: | No, sir. |
| CRAIG'S COUNSEL: | And your interest in that retirement account is approximately $12,000? |
| CRAIG: | Approximately. |
| CRAIG'S COUNSEL: | And you're asking first and foremost on this amount that you get deductions and credits for all—for all of those values? |
| CRAIG: | Yes, sir. |
| CRAIG'S COUNSEL: | Now, you've also made substantial payments on tax debt? |
| CRAIG: | Yes, sir. |
| CRAIG'S COUNSEL: | Do you know as you sit here today how much you have paid? |

| | |
|---|---|
| CRAIG: | I would like Mr. Hubbs to elaborate on that because he—he keeps up with that. I know I'm still paying taxes on that. |
| CRAIG'S COUNSEL: | So, you're gonna defer to him and let him testify on it? |
| CRAIG: | Yes, sir. |
| CRAIG'S COUNSEL: | And you're gonna ask the court to also give you a credit for those taxes that have been paid? |
| CRAIG: | Yes, sir. |

Thereafter, Holly's counsel stated that no pleading had been filed asking for "any of this." Counsel argued that there had been an opportunity to make this argument on December 9, and "[t]hey did not do it." The circuit court asked for an explanation, and Craig's counsel argued that the issue on December 9 had been who was going to buy out the company and not whether there were credits or offsets. Craig's counsel further argued:

| | |
|---|---|
| CRAIG'S COUNSEL: | And certainly if [Craig] is entitled to a substantial amount of monies or credits, that should be deducted from that rather than just switching money from all these different hands throughout the process, and that—that's one of the things we're getting at. |
| | Specifically with the taxes which is where he's actually raised the objection at. Uh, if you read the decree, it states that, and this is Section 9 that deals with the business. It states that the buying party shall assume the tax debt for the business and shall be solely responsible for the same. And our position is that this—this just goes and highlights the issue of when you force [Craig] to buy the business when that was clearly not the intent of the entire decree, and you get in this situation where now you have a very inequitable division of debt because that debt was not factored into the value of the business, and we'll present evidence to that today. |
| | And so, I think the court certainly as a court of equity should be able to hear what he's talking about with these |

6

tax payments and give him credit and deductions for that now that he's being forced to buy the business in a way that was not part of the initial decree.

. . . .

THE COURT:          We're here for the sole purpose today of the plan to buy that business back. And—and I like [Holly's counsel] agree that if you have a plan, we'd like to hear that; otherwise, I would—I would agree with [Holly's counsel] that a motion needs to be filed to put [him] on notice so they can—they're not in a position right now to dispute any of this. They probably have no documentation, no witnesses, no—anything to dispute guns, pension, or any tax debts that I can't—that I think . . . .

CRAIG'S COUNSEL:    . . . Respectfully, Judge, I will say that there was a motion of contempt that has been filed before this court. So, there was some notice on that issue, but I also. . . .

THE COURT:          When was that filed?

CRAIG'S COUNSEL:    It was filed a long time ago—in fact, I believe it was filed . . . .

THE COURT:          Well, then that should have been taken up at the—at the hearing on December 9.

CRAIG'S COUNSEL:    Yes. It has not been taken up yet though. The judge—the court has not made any ruling on that, and again that goes back . . . .

THE COURT:          . . . well, the attorneys never brought it up.

CRAIG'S COUNSEL:    And—and that may be—that may be true, but the motion's still not been ruled on. And the—the hearing and our position is that that hearing addressed whether [Craig] would have to buy out the company, and the court specifically reserved how that was going to happen. And that's what we're presenting evidence on here today is how that's going to happen. We agree the court has ordered him to pay $206,000 and some change. We agree with that. And the court has ordered

7

that. We don't—we obviously filed a notice of appeal so we had some issues with it, the order. But we agree that is what the court has ordered and we're not trying to change that, we're just trying to present to the court an equitable way to make that happen and certainly as a court of equity we think the court has the—uh—the ability to do that and hear this evidence to make that decision.

THE COURT:    Okay, I'm looking on the court docket[.]

. . . .

THE COURT:    But I'm looking at, I've not seen any motion filed since the mandate was filed?

CRAIG'S COUNSEL:    No and that is correct. The motion for contempt was filed before—and in fact, I think it might have been competing motions for a contempt and they were set for a hearing at one point and then the hearing was postponed because the Court of Appeals was still considering the case. And that just held up these contempt motions hearing.

THE COURT:    Okay, well we're not—we're not here on the motion for contempt.

CRAIG'S COUNSEL:    I understand that, Judge. The only reason I'm referencing this motion for contempt is because the other side is saying we never heard of these claims, and that's—that's not—that's not entirely accurate, they have been put on notice that he is asking for these. And we're—and—and we understand the court hasn't ruled on that and so he may not get that credit today. But we merely want if the court's gonna put in an order something that would say that he's gonna get an offset for that if he's awarded that—on the contempt issues.

THE COURT:    Well, I'm gonna take—I'm gonna let you present testimony and evidence as to how he plans to buy it back, but not getting into with the pension, not getting into guns or anything of that nature, but as to a plan to buy it back. And if you need—if you need a couple of minutes to regroup or talk to your client, or talk to [co-

8

counsel], I'll give you that but we're not here to talk about anything that [Holly's counsel's] never been put on notice about.

Craig proffered Hubb's testimony and exhibits showing that Craig paid around $225,000 in taxes from 2013 to 2017. Craig also proffered his own testimony that Holly had started a landscaping business named "Higher Groundskeeping" and that she had tried to solicit business from both of his customers, McDonald's and Braum's. He said that he had tried to borrow money "on the business," but he was denied because he had no secured contracts.

The court ordered Craig to make a monthly payment for five years beginning on April 15. Holly asked if the payment could be secured, suggesting an assignment or a beneficiary interest in an insurance policy. The circuit court denied the request.

On March 30, 2020, the circuit court filed its order stating that Craig shall pay $3,463.63 a month for sixty months, beginning April 15, 2020, until the total amount of $207,817.74 is paid. Craig filed a timely notice of appeal, and Holly filed a timely notice of cross-appeal.

III. *Discussion*

Neither the notice of appeal nor the notice of cross-appeal includes language abandoning any pending but unresolved claims. Ark. R. App. P.–Civ. 3(e)(vi) (2020) (a notice of appeal or cross-appeal shall state that the appealing party abandons any pending but unresolved claim). Holly did not file any motion that is left pending, but because Craig did not abandon any pending but unresolved claims in his notice of appeal, we do not have a final order before us.

It is well established that a final order is necessary for appellate review:

> Whether an order is subject to an appeal is a jurisdictional issue that this court has the duty to raise even if the parties do not. *Gray v. White River Health Sys., Inc.*, 2016 Ark. 73, at 2–3, 483 S.W.3d 293, 294. Our rules state that an appeal may be taken from a final judgment or decree. Ark. R. App. P.–Civ. 2(a)(1) (2019). Our supreme court has held that "for an order to be final and appealable, it must terminate the action, end the litigation, and conclude the rights to the matter in controversy." *Beverly Enters.-Ark., Inc. v. Hillier*, 341 Ark. 1, 3, 14 S.W.3d 487, 488 (2000). The purpose of requiring a final order is to avoid piecemeal litigation. *Gray*, 2016 Ark. 73, at 3, 483 S.W.3d at 294. In *Roach v. Roach* we explained:
>
> > [B]ecause "[c]ontempt is not merely a collateral issue, like attorney's fees," *Anderson-Tully Co. v. Vaden et al.*, 2018 Ark. App. 484, at 4, 562 S.W.3d 249, 251, a circuit court's order is not final and appealable when a contempt issue remains pending. *Id*. The circuit court did not rule on the petition for contempt that Karen filed shortly before the second phase of the trial in April 2015, and Karen did not abandon any pending claim in her notice of cross-appeal under Rule 3(e)(vi) of the Arkansas Rules of Appellate Procedure-Civil. Therefore, because Karen's contempt petition remains pending . . . we dismiss the appeal and cross-appeal without prejudice.
>
> 2019 Ark. App. 34, at 6, 571 S.W.3d 487, 490–91.
>
> Here, Diana's contempt petition was not resolved by written order and therefore remains pending. *See* Ark. Sup. Ct. Admin. Order No. 2 (declaring that an oral order announced from the bench does not become effective until reduced to writing and filed). Furthermore, she did not abandon any pending claims in her notice of appeal under Rule 3(e)(vi) of the Arkansas Rules of Appellate Procedure–Civil nor was a Rule 54(b) certificate executed. Therefore, we lack jurisdiction to address Diana's challenges to the court's order. We dismiss the appeal without prejudice.

*Wilcox v. Wilcox*, 2020 Ark. App. 489, at 2–3; *see also Booker v. Booker*, 2021 Ark. App. 327, at 2–3; *Maxwell v. Maxwell*, 2019 Ark. App. 229.[2]

---

[2]Craig's contempt motion does not affect the finality of the divorce decree. *See Booker, supra; Maxwell, supra; Wilcox, supra; Roach, supra* (each holding that contempt motions filed before the appealed order and never ruled on resulted in nonfinal orders, which prevented appellate jurisdiction); *see also Decker v. Decker*, 984 So. 2d 1216, 1220 (Ala. Civ. App. 2007) (when a party files a contempt motion alleging a violation of the provision of a previously entered final divorce judgment, that contempt proceeding is separate and

This case exemplifies the significance of the requirement that parties abandon any pending but unresolved claims, thus allowing an appeal to be taken from a final judgment or decree. The outstanding contempt motion is Craig's basis for claiming offsets, and without a ruling on the motion, the order for him to pay a certain amount for Holly's portion of the business is not final. The court's discussion and counsel's arguments were that the contempt might be raised and the offsets might be applied at some later time. Dismissing without prejudice allows the circuit court to rule on the pending contempt motion, and piecemeal litigation will be avoided.

Dismissed without prejudice.

MURPHY and BROWN, JJ., agree.

*Henry Law Firm*, by: *Mark Murphey Henry*, for appellant.

*Smith, Cohen & Horan, PLC*, by: *Matthew T. Horan*, for appellee.

---

independent from the action in which the divorce judgment was entered and does not affect the finality of the divorce judgment; on the other hand, if, during a postdivorce proceeding, the circuit court fails to rule on every pending contempt motion, its failure to do so does affect the finality of the judgment in the postdivorce proceeding because, in such circumstances, the filing of each contempt motion does not initiate a separate and independent proceeding).