Cite as 2025 Ark. App. 595

# ARKANSAS COURT OF APPEALS

DIVISIONS II & III
No. CV-24-269

| | |
|---|---|
| | **Opinion Delivered** December 10, 2025 |
| MICHAEL WESLEY WALTERS<br>APPELLANT | APPEAL FROM THE MADISON COUNTY CIRCUIT COURT [NO. 44CV-22-67] |
| V. | |
| THE ESTATE OF CHRISTOPHER PETER DOCKMAN, DECEASED; AND DEANNA ROSE DOCKMAN, INDIVIDUALLY AND IN HER CAPACITY AS EXECUTRIX OF THE ESTATE OF CHRISTOPHER PETER DOCKMAN | HONORABLE BETH STOREY BRYAN, JUDGE |
| APPELLEES | AFFIRMED |

## BRANDON J. HARRISON, Judge

In this boundary-line dispute, Michael Walters appeals the circuit court's order quieting title with the estate of Christopher Peter Dockman, deceased; and Deanna Rose Dockman, individually and in her capacity as executrix of the estate of Christopher Peter Dockman (collectively "Dockman"). Walters argues that the circuit court erred in finding that he had not met his burden of proof for boundary by acquiescence. We affirm the circuit court's order.

This case began on 20 June 2022, when Walters filed a petition to quiet title in the Madison County Circuit Court. Walters acknowledged that the record owner of the land over which he sought to quiet title is Christopher Peter Dockman, deceased, and that his

daughter, Deanna Rose Dockman, is the personal representative of his estate. The petition explained that the claimed property lies within the southeast and eastern boundaries of the legal description of Dockman's property but is fenced off and enclosed on the same side as Walters's property. Walters's predecessor in title, Michael Harriman, leased the property in 2006 and received title to the property in November 2007; from that point until it was conveyed to Walters in April 2014, Harriman maintained the fence line around the claimed property adversely to Dockman. Likewise, Walters has continued maintenance of the fence line throughout his property ownership, and he alleged that the fence line had been in place for decades. Walters claimed that Dockman had abandoned any interest in the claimed property, having failed to maintain the property for many decades and failing to possess it or otherwise make a claim of ownership over the claimed property in the face of a maintained fence line for many decades.

Dockman answered on 20 July 2022 and stated that Christopher Dockman had purchased his property in 1992, that the old fence referred to by Walters was in disrepair and not maintained by either party, and that only since the death of Christopher Dockman had Walters begun to clean near the fence and clear a trail for his utility vehicle. The answer also explained that Christopher Dockman had always told his daughter that the fence was not on the property line and that he would put it on the line when he had it surveyed. In addition, Dockman's trash cans had been on land east of the fence (now claimed by Walters) since trash service had been established approximately one year ago. Dockman also raised a counterclaim, alleging that "since the death of Christopher Peter Dockman[,] the defendant has attempted to use some of the land between the fence and the Counter

Claimants survey line by making trails, cutting trees, dumping dead animal remains, and damaging the Counterclaimants property." The counterclaim sought damages for Mr. Walters's improper use and damage to the property.

In November 2022, Walters moved for summary judgment on his quiet-title claim. Walters asserted that he and his predecessors in interest have had actual and constructive possession of, and have objectively manifested a claim of ownership over, the claimed property. He also denied the existence of any genuine issue of material fact and asserted that he is entitled to a decree quieting title under a theory of adverse possession or, alternatively, boundary by acquiescence. In support of his motion, Walters attached a number of documents, including affidavits of himself and Harriman, land surveys, and county records.[1]

Dockman responded that summary judgment was inappropriate because there were material factual issues to be determined at trial. Attached to the response was the warranty deed from Dockman's purchase of the property, a boundary survey, and the affidavits of Deanna Dockman and Sara Dean Hauser, a licensed title insurance agent. Hauser's affidavit stated that the legal description of the disputed property in Walters's petition to quiet title did not describe all the property between the fence and the surveyed deed lines.

The court proceeded to schedule several motion hearings and nonjury trial dates. On 4 March 2023, the court scheduled a nonjury trial on 18 April 2023; four days later, the

---

[1]The record shows that there are two documents labeled "Exhibit A," two documents labeled "Exhibit B," two documents labeled "Exhibit C," and two documents labeled "Exhibit 3" attached to the summary-judgment motion. Also attached are three documents labeled "Exhibit 1" and three documents labeled "Exhibit 2."

3

court "amended" its schedule to include a motion hearing on March 15. The record shows that the March 15 hearing did not occur, however, and the trial court administrator notified counsel via email on March 15 that the summary-judgment motion was denied.

The court proceeded with a bench trial on 18 April 2023.[2] Harriman testified that he used to own Walters's property and that he had bought the property from Gordon Faulkner in 2007. Harriman had lived in the area since he was a child, and he remembered a fence that separated Faulkner's property from the Eubanks's property (now Dockman's property). Faulkner and Eubanks both ran cattle on their respective land. Harriman's uncle, Danny Clark, also ran cattle on Faulkner's land in the spring and summer months, and Harriman helped move the cattle and mend the fence when needed. Harriman began leasing the property and running cattle in 2006; he ran cattle until 2013, and he repaired the fence as needed. Harriman said, "Me and [Dockman] had a deal worked out. He didn't patch fence, but he would tell me where it was down and I could patch it." There was also a gate in the fence between the two properties that was kept closed so that cattle would not enter Dockman's property. Also during that time period, Al Watkins used Dockman's property to cut hay and pasture cattle for a few months out of the year. Watkins did not go on the other side of the fence when using Dockman's property. Also, when Harriman was running cattle, he kept his hay "[r]ight there at the fence line, what used to be my fence line and Chris's." The hay was near the gate between the properties and remained there five or six months out of the year.

---

[2]During the bench trial, Walters stipulated that this was "strictly . . . a boundary by acquiescence case."

4

Walters testified that when he bought his land in 2014, the fence between his property and Dockman's property was rusted and needed some repair. There were also areas with newer wire from recent patches and T-posts that had replaced some of the older wooden posts. Walters said that Dockman kept the gate in the fence closed and that the gate had Dockman's name on it. On Dockman's side of the fence, he hayed his property every other year and cut it "all the way up to the fence line." Walters hired Kenneth Watkins to bulldoze a roadway around the perimeter of the property as close to the fence row as possible. Part of the roadway is in the disputed area, but Dockman did not object to it. Walters explained that he and Christopher Dockman had "both accepted that [the property line] was where the fence row was. He cut his hay up to the fence, I made my road on my side of the fence, and I repaired the fence in several areas over the time." Walters acknowledged that the boundary line described in his deed is short of the fence line, but he asked the court to award him possession of the disputed area "based on [his] possession of it and [his] predecessor's possession between the deed line and where the fence is." He also said that moving the fence line would cost him thousands of dollars. On cross-examination, Walters confirmed that he had not had cattle on his property but that he intended to.

Deanna Dockman testified that she had moved on to her father's property right after he died in June 2021. Walters had immediately told her that he was interested in buying the land, but she said it would not be for sale. "And he made the comment—he said, well, maybe not now, but it will be because you can't take care of it. So, I've had issues with him from day one." According to Dockman, Walters started bulldozing to create the road

around his property the day after her father passed away. She said that she had maintained the area right outside the gate by mowing and weed eating after her father became unable to do it. She denied that Harriman had ever had any hay pens near the fence line or ever had cattle on his property. She also disagreed that Walters had put in the roadway while her father was alive.

At the conclusion of the bench trial, the court directed the parties to submit proposed findings of fact and conclusions of law. On 12 June 2023, the court issued an order denying Walters's petition to quiet title. Relevant to this appeal, the court found that Walters had failed to prove boundary by acquiescence.

> There is no evidence of any tacit agreement to accept the fence line as the visible evidence of dividing the properties. The fence was already in existence well before either party lived on or owned either of the two properties, and there is no evidence to show that the parties, or rather their predecessors in title, established the fence line as to settle the boundary between them. Furthermore, while there was testimony of the fence being repaired, this in and of itself is not enough to establish Boundary by Acquiescence.

Walters timely appealed the circuit court's order, and the record was lodged with this court on 19 September 2023. Before the case could be submitted, however, Dockman moved to dismiss the appeal without prejudice because the circuit court's order was not final. The counterclaim raised by Dockman requesting damages for improper use and damaging the property was still pending. Consequently, this court dismissed the appeal on 31 January 2024.

The case was remanded to the circuit court, and on 26 February 2024, Walters filed a motion in the circuit court to dismiss Dockman's counterclaim and for entry of a final judgment. Walters asked the court to modify its previous 12 June 2023 order to include a

6

dismissal of Dockman's counterclaim for failure to prosecute under Ark. R. Civ. P. 60(b) and the issue-preclusion arm of res judicata. In response, Dockman denied there was any "clerical mistake" or error for the court to correct under Ark. R. Civ. P. 60(b). She also asserted that res judicata did not apply because its purpose is to promote finality in litigation by "preventing a party who had one fair trial on a matter from relitigating the matter a second time." *Christian v. SWO Props., Inc.*, 2023 Ark. App. 265, at 6, 667 S.W.3d 556, 561. Here, there is no "prior" or "first" suit, and the counterclaim was not litigated at the 18 April 2023 hearing.

On 5 March 2024, Dockman filed a contempt motion and alleged that since the court had ruled against Walters on 12 June 2023 and established that the subject property is Dockman's property, Walters and his friends and associates continued to trespass on the property by dumping rocks and dead-animal remains and by driving his ATV on the property. Dockman argued that a finding of civil contempt was both appropriate and necessary and that Walters should be ordered to remain off of Dockman's property. Dockman also requested sanctions in the form of attorney's fees for having to file the contempt motion "along with an amount the Court deems appropriate so to penalize and deter Mr. Walters' continued contempt of this Court." Walters answered and denied all allegations.

The circuit court convened a motion hearing on 29 March 2024. Walters argued that the 18 April 2023 proceeding was a full trial on the merits, that the language dismissing the counterclaim was inadvertently not included, and that it was appropriate for the court to enter an amended order dismissing the counterclaim. Dockman asserted that the

7

scheduling order that set the 18 April 2023 nonjury trial was "amended to say it was . . . a motion hearing." In addition, the counterclaim was mentioned only once at the April 18 proceeding, when the court introduced the case on the record and referred to Dockman as the defendant and counterclaimant.

The court ruled that the 18 April 2023 proceeding had been a full trial and that Dockman had not submitted evidence "that would entitle them or entitle her to any relief on her claim and that's why her Counterclaim was denied." Unfortunately, the court and both the attorneys on the case did not notice "a line being left out at the end [of the order], that the Counterclaim is denied." The court ordered Walters's counsel to prepare an amended order "to reflect what the Court's actual ruling was after the trial that was held back in 2023." Regarding the motion for contempt, the court stated,

> I'm not making a ruling on it, but I think that would need to be brought in a separate action and then there might be arguments as to res judicata, et cetera. But at this point, the case is—is closed. So, whatever needs to be reflected in the order, you all just make sure you agree to the wording in the order to make sure we don't run into another bump because that's still thought of as pending. It's not pending.

The circuit court entered an "Amended Order Denying All Claims" that reiterated the findings from the 12 June 2023 order and added, "Furthermore, the Court finds that the Counterclaimant has failed to present proof sufficient to carry her burden of proof and as such, the Counterclaim is hereby dismissed with prejudice." Walters timely appealed the circuit court's order.

## I. *Jurisdiction*

We first address a jurisdictional issue raised by Walters. He asserts that the circuit court refused to rule on the contempt motion below and instead considered it a collateral

8

matter, which "raises a question of jurisdiction." He cites *Sanchez v. Weeks*, 2021 Ark. App. 493, in which this court held that a divorce decree was not a final, appealable order due to an outstanding contempt motion. In *Sanchez* we held that "contempt is not merely a collateral issue" and that "a circuit court's order is not final and appealable when a contempt issue remains pending." *Id.* at 2 (quoting *Roach v. Roach*, 2019 Ark. App. 34, at 6, 571 S.W.3d 487, 490).

In response, Dockman contends that the contempt motion is not pending because "it was effectively stricken from the record." The circuit court stated the contempt motion "would need to be brought in a separate action," that the case is "closed," and that the motion was "not pending."

We need not decide whether the contempt motion on this record is collateral (some may prefer the word immaterial) to the underlying merits in this case. Today we decide this issue based on Ark. R. App. P.–Civ. 2(a)(2). Recently, in *McCain Mall Co. Ltd. Partnership v. Nick's Bar Louie, Inc.*, 2025 Ark. App. 505, handed down 29 October 2025, this court held that an appealed order was not final due to outstanding claims and counterclaims. McCain Mall petitioned the supreme court for review of this court's decision and argued that, notwithstanding the pending claims and counterclaims, the circuit court's order to the clerk "to close this case to further filings" made the order appealable pursuant to Ark. R. App. P.–Civ. 2(a)(2), which provides that an appeal may be taken from an order that, in effect, determines the action and prevents a judgment from which an appeal might be taken or discontinues the action. The supreme court apparently agreed with

9

McCain Mall's argument, and in a docket entry, it vacated this court's opinion and remanded to this court for a decision on the merits.

Here, the circuit court did not rule on the contempt motion; however, it specifically addressed the motion, found the contempt motion was "not pending," and declared the case "closed." Pursuant to the supreme court's cue in *McCain Mall*, we hold that these findings by the circuit court confer appellate jurisdiction in this case. We now address the merits.

## II. *Boundary by Acquiescence*

Boundary-line cases are reviewed de novo. *Durham v. McCone*, 2018 Ark. App. 392, 555 S.W.3d 907. This court, however, will not reverse findings of fact unless they are clearly erroneous. *Id.* A finding of fact is clearly erroneous when, although there is evidence to support it, we are left with a definite and firm conviction that a mistake has been made. *Id.* Because the location of a boundary is a disputed question of fact, we will affirm the circuit court's finding unless it is clearly against the preponderance of the evidence. *Id.* In reviewing findings of fact, we give due deference to the circuit court's superior position to determine the credibility of the witnesses and the weight to be accorded their testimony. *Id.*

Walters contends that this court should reverse because the parties and their predecessors treated the fence line as the property line, which created a boundary by acquiescence. In *Teague v. Canfield*, this court explained,

> A boundary by acquiescence may arise when adjoining landowners tacitly accept a fence, or other monument, as the visible evidence of a property boundary and apparently consent to it. *Myers v. Yingling*, 372 Ark. 523, 527, 279 S.W.3d 83, 87 (2008). A boundary by acquiescence that is inferred from

10

landowners' conduct over many years can imply the existence of an agreement about the location of the boundary line. *Id.* This boundary may exist without prior dispute. *Harris v. Robertson*, 306 Ark. 258, 813 S.W.2d 252 (1991). Neither the mere existence of a fence, nor one party's subjective belief that a fence is a boundary line will sustain a finding of acquiescence. An express recognition or agreement between the parties is not necessary. *Boyster v. Shoemake*, 101 Ark. App. 148, 152, 272 S.W.3d 139, 143 (2008). Tacit acceptance may suffice if a mutual recognition of the boundary line can be inferred from the parties' conduct over a period of years. *Thurkill v. Wood*, 2010 Ark. App. 319, at 3–4, 374 S.W.3d 790, 793.

2014 Ark. App. 712, at 5.

Walters argues that the record demonstrates that the parties and their predecessors treated the fence as the boundary line for decades. He asserts that the record testimony showed:

> (i) The location of the fence line never changed since Michael bought the property in 2014. Part [of the fence] was nailed to trees and rusted. It would hold cattle inside.
>
> (ii) The parties treated the fence line as the boundary line. Michael said he would ask permission of Dockman to go onto Dockman's side of the fence to retrieve a deer or collect mushrooms.
>
> (iii) The parties had a gate in the fence line which was kept shut. Dockman had his name on the gate would keep the gate shut and would lock it.
>
> (iv) Fence repair by Harriman and Michael. On the other hand, Michael testified he never saw Dockman repair the fence.
>
> (v) Each party and predecessor ran cattle on their respective sides of the fence for years.
>
> (vi) The fence had no trespassing paint on it.
>
> (vii) The parties cut hay only on their own sides of the fence.
>
> (viii) Michael built a road around the property using the fence as the boundary and if he had to remove it would lose thousands of dollars.

11

(Internal citations omitted.) Walters implies that the circuit court arbitrarily disregarded this testimonial evidence.

Walters also asserts that the circuit court made an "error of law" by focusing on the condition of the fence and whether the parties themselves (not including their predecessors) had treated it as a boundary. He argues that whether a fence is in disrepair is not relevant if it acts as a visible monument and that the boundary-by-acquiescence doctrine does not disregard the actions of predecessors.

Dockman responds that instead of citing testimony or evidence that the circuit court allegedly disregarded, Walters is simply citing his own interpretation of disputed facts and testimony and implying that the court should have interpreted or weighed those facts differently. But the circuit court heard all the evidence, listened to the witnesses' testimony firsthand, made credibility determinations based on that evidence, and found that the evidence was insufficient to establish a boundary by acquiescence. Dockman asserts that the court's determination is entitled to substantial deference and is not clearly erroneous. Dockman also contends that Walters attempts to bypass the clearly erroneous standard of review by suggesting that the circuit court made an "error of law" in considering the condition of the fence in its decision. Dockman calls this a "blatant mischaracterization of the Court's ruling" and explains that the court did not even reference the condition of the fence in its ruling on boundary by acquiescence.

Resolution of conflicting evidence and determination of witness credibility are within the province of the fact-finder. *Horton v. Taylor*, 2012 Ark. App. 469, 422 S.W.3d 202. The circuit court weighed the testimony and evidence and found that Walters had

12

not met his burden of proof for boundary by acquiescence. We are not left with a definite and firm conviction that a mistake was made and therefore hold that the circuit court did not clearly err in its finding.

Affirmed.

VIRDEN, TUCKER, HIXSON, and BROWN, JJ., agree.

KLAPPENBACH, C.J., dissents.

**N. MARK KLAPPENBACH, Chief Judge, dissenting**. I believe that we lack appellate jurisdiction of this appeal and must dismiss. Therefore, I dissent.

The majority asserts that the supreme court's order in *McCain Mall* should be interpreted to mean that we have an appealable order in this case. We do not. In *McCain Mall*, the circuit court's order included the following: "The Clerk is hereby ordered to close this case to further filings." The wording in the *McCain Mall* order prevented a judgment from which an appeal might be taken or discontinued the action. Ark. R. App. P.–Civ. 2(a)(2). The same is not true here.

The majority acknowledges that the circuit court did not rule on the pending contempt motion. The written order does not mention the contempt issue. "Contempt is not merely a collateral issue, like attorney's fees," so a circuit court's order is not final and appealable when a contempt issue remains pending at the time of the order's entry. *Ballegeer v. Ballegeer*, 2021 Ark. App. 390, at 10–11; *Williams v. Williams*, 2020 Ark. App. 204, at 14, 599 S.W.3d 137, 145. In the appellant's brief, Walters raises the "question of [appellate] jurisdiction" by stating that the circuit court had not ruled on the contempt motion. Walters asks this court to "instruct" the circuit court to rule on the "unresolved" motion.

13

Arkansas Rule of Civil Procedure 58 provides that "[e]very judgment or decree shall be set forth on a separate document. A judgment or decree is effective only when so set forth and entered as provided in Administrative Order No. 2." *See also DFH/PJH Enters., LLC v. Caldwell*, 373 Ark. 412, 284 S.W.3d 66 (2008); *Hamerlinck v. Hamerlinck*, 2022 Ark. App. 89, 641 S.W.3d 659. The contempt matter is not resolved, so Walters was correct to raise this jurisdictional defect.

We lack appellate jurisdiction to consider this appeal and must dismiss. With due respect to my colleagues, the majority's decision disregards settled rules of law and longstanding precedent.

*Robert S. Tschiemer*, for appellant.

*RMP LLP*, by: *James Bo Renner* and *Mallory Shamoon*, for appellees.